## Meek v. Commonwealth.

(Decided May 4, 1926.)

## Appeal from Johnson Circuit Court.

1. Indictment and Information—Indictment for Murder, Charging that Accused and Codefendant Jointly and Severally, Unlawfully, etc., Shot and Killed Another, and Charging Each as Principal and the Other as Aider and Abettor, Held Sufficient on Demurrer.— Indictment for murder, charging that accused and codefendant jointly and severally, unlawfully, willfully, feloniously, and with malice aforethought, shot and killed another, and charging each of them as principal and the other as aider and abettor, held sufficient on demurrer.

2. Criminal Law.—Errors of trial court in instructing jury cannot be considered on appeal, unless relied on as ground for new trial.

3. Homicide.—Whether accused aided and abetted codefendant, who killed another in presence of accused and with accused's pistol, held for jury.

4. Homicide—Jury Held Justified in Finding that Accused had Aided and Abetted Codefendant in Killing Deceased.—Jury held justified in finding that accused had aided and abetted codefendant in killing deceased who was shot with accused's pistol shortly after

accused and codefendant had engaged in target practice together, where both later denied knowledge as to cause of deceased's death.

5. Clerks of Courts—Courts—Where Transcript of Evidence was Typewritten on Very Thin and Transparent Copy Paper, or was Carbon Copy, Penalty by Deduction from Fees will be Inflicted on Stenographer or Clerk.—Where record on appeal was condemned because transcript of evidence was typewritten on very thin and transparent copy paper, or was a carbon copy, penalty by deductions from fees will be inflicted on stenographer or clerk who was responsible.

J. B. CLARK for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

Appellant, Aaron B. Meek, and one Henry Cook were indicted by the grand jury of Johnson county for the murder of Jesse Caudill. Appellant was tried separately, was found guilty of manslaughter, his punishment was fixed at confinement in the penitentiary for five years, and he appeals.

Appellant assigns as a reason for a reversal, first, that the trial court erred in overrruling his demurrer to the indictment. To that contention we can not agree. The indictment in plain and explicit terms charges appellant and his co-defendant, jointly and severally, to have shot and killed Jesse Caudill, each of them being charged as the principal and the other as an aider and abettor. All of the essential elements of the crime of murder are charged, that is, that the shooting and wounding which resulted in the death of Caudill was done by the defendants unlawfully, willfully, feloniously and with malice aforethought. The indictment was good and the trial court properly overruled the demurrer thereto.

Again appellant insists that the judgment must be reversed because of errors committed by the trial court in instructing the jury. His failure to make such alleged errors a ground for a new trial in his motion for same. precludes that question here. Such errors may not be considered on appeal unless relied upon as a ground for a new trial in the trial court. Thompson v. Commonwealth, 122 Ky. 501, 28 Rep. 1137, 91 S. W. 701; Polk v. Commonwealth, 169 Ky. 613, 184 S. W. 1127; Owens v.

Commonwealth, 181 Ky. 381, 205 S. W. 398; Finney v. Commonwealth, 190 Ky. 537, 227 S. W. 999.

It is most strenuously urged for appellant that a peremptory instruction to acquit should have been given, or at least that the verdict is not sustained by but is flagrantly against the evidence. The following facts appear in the record which seem to this court to negative those contentions: Appellant and his codefendant both appear to have gone to the place where religious services were being engaged in on a Sunday in November, 1924, prepared for trouble rather than for worship. The former was armed with a .38 special pistol, the latter with a .45 automatic. Both of them were drinking moonshine whiskey. The church was located near the railroad station, Chestnut, in Johnson county. They did not enter the house of worship but remained about the place until services had concluded. Later they proceeded together down the railroad from the station to a cut about 150 yards from it where with their pistols they engaged in target practice, using one of the railroad mile posts as a target. There is evidence that both of them were shooting at that place. While there a long freight train passed going in the direction of the station. Jesse Caudill, who was killed a few moments later, was sitting on the front end of a coal "gon" about the middle of the train and on the opposite side from Chestnut station. The freight train was proceeding slowly, having just left a siding, and appellant and his codefendant climbed upon one of its cars and rode to a point opposite the station, alighting on the side opposite from the station. Shortly after they alighted the car on which Caudill was riding passed them, and without any pretense of excuse or justification appellant's codefendant shot him and killed him instantly. Two shots were fired, but only one took effect, striking deceased in the back of the head. Appellant was in the immediate presence of his codefendant when he shot deceased, and one witness testified that when Cook fired the shot he took rest upon appellant's shoulder. Only one witness claims to have seen appellant's codefendant do the shooting, though several of them heard the shots that were fired. None of the witnesses who heard the shooting had seen Caudill on the train, and none of them knew that he was struck and killed when the shots fired. These witnesses were on the platform at Chestnut station when the shooting was done, and some three or four of them climbed upon the moving freight train and rode

some distance up the track to get away from appellant and his codefendant who were doing the shooting. As they came back after the train passed they discovered the dead body. The alarm was given and a crowd soon congregated. Appellant and his codefendant joined those about the dead body and professed to know nothing about it. They stayed a short while and again went down the railroad to the cut. There they met two women whom they told that they had heard of a man having been killed up at Chestnut. They went back to where the dead body was lying with the two women and spent considerable time together there with the crowd, both of them professing to know nothing about how the deceased was killed or who had done it. Cook suggested at one time that he thought everybody should be searched to try to find who had a gun. Appellant took his codefendant with him to the home of a relative who lived very near to where the dead body was lying and had his kinsman prepare dinner for them which they ate together. While at the home of this kinsman appellant and his codefendant made an opportunity to get away from the crowd, and appellant's gun. with which Cook had shot and killed Caudill, was thrown to a place of hiding in the timber and underbrush. The two of them then remained together from the time Caudill was killed about 12:30 or one o'clock until about 4:30, during all of which time they were at or near about the place where the body of their victim was lying, and during all of which time they professed to know nothing about how he came to his death, and apparently said and did such things as seemed to them likely to divert suspicion from themselves.

Appellant for himself testified that he did no shooting in the cut below the railroad station. He testified that after he and Cook had ridden the freight train to a point opposite the station and alighted therefrom and were standing together, the car on which deceased, Caudill, was riding ran by them. He stated that thereupon and without his knowledge, encouragement or approval Cook suddenly snatched appellant's pistol from its place of concealment on appellant's person and fired two shots He stated that the first shot struck the ground near his feet, and that he jumped back, and that the second shot struck and killed Caudill. He stated that he did not shoot at all; that he did not know his codefendant was going to shoot and did nothing to encourage or aid or advise or abet him so to do; and that as Cook had thus disarmed

him he was afraid of him, and for that reason did not tell who had shot and killed Caudill until he was arrested by the sheriff.

It was for the jury to say whether or not it would believe appellant's testimony. The facts and circumstances summarized above certainly were sufficient to authorize submitting to the jury the question whether or not appellant aided and abetted his codefendant in shooting and killing Caudill. He admits he was in the immediate presence of his codefendant when that was done. He admits his codefendant shot and killed Caudill with his (appellant's) pistol. He testified that his codefendant was armed with a .45 automatic pistol on that occasion. No other witness so testified. The witnesses who saw the shooting in the cut prior to that when Caudill was killed were not close enough to know what kind of a gun was being used or whether they had more than one. Appellant and his codefendant got together shortly after they reached the church grounds that day. They went off down the railroad together; they took a drink together in the cut; they were both shooting at that point; they came back together to the place where they killed Caudill; and there with appellant's gun Cook fired the fatal shot. They remained together some three or four hours thereafter, during which time they both professed not to know anything about how deceased came to his death, and said and did a number of things with the evident intent to divert suspicion from themselves. Appellant stated that as Caudill rode by them on the freight car he signed to them in a manner indicated to the jury, and as he did so Cook said to appellant: "He waved 'son-of-a-bitch' at us." That occurred before Cook procured the gun and shot. With those facts before it the jury certainly could reasonably infer that appellant intentionally furnished Cook the pistol with which to shoot. If Cook had had a gun and without encouragement from appellant had decided to shoot Caudill for waiving at him as he says he did, it seems altogether reasonable he would have used his own gun. The facts and circumstances certainly warrant the conclusion that appellant aided and abetted his codefendant in killing Jesse Caudill. Neither contention made for the appellant can be sustained. He was not entitled to a peremptory instruction to be found not guilty at the close of the testimony, and the verdict returned cannot be said to be flagrantly against the evidence.

The stenographer's transcript of evidence with the record herein is typewritten on very thin and transparent copy paper. In fact, it appears to be a carbon copy. For that reason the record is condemned. If it is the original prepared by the stenographer, she will be penalized by having $20.00 deducted from the $55.00 fee for making the transcript. If the clerk forwarded the carbon copy and retained the original he will be penalized by having $10.00 deducted from his fee for copying the record. The trial court will adjust this matter by proper order upon the filing of the mandate. If the fees have been paid a refund in conformity herewith must be made.

Appellant's trial appearing to have been free from error to the prejudice of his substantial rights, the judgment will be affirmed.

Judgment affirmed.